IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| MIGUEL JACKSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:14-cv-00376-MTT-CHW |
| | : | |
| Warden CARL HUMPHREY, *et. al.* | : | Proceedings Under 42 U.S.C. § 1983 |
| | : | Before the U.S. Magistrate Judge |
| Defendants. | : | |
| | : | |

### REPORT AND RECOMMENDATION

Before the Court is a Motion to Dismiss filed by Defendants Bishop, Chatman, Gholston, Humphrey, Logan, McCloud, McMillan, Owens, Tillman, and Williams. Doc. 17. Because Plaintiff's claims are time-barred and because Plaintiff failed to exhaust his available administrative remedies, it is **RECOMMENDED** that the Defendants' Motion be **GRANTED** (Doc. 28), and that Plaintiff's Complaint be **DISMISSED**.

### BACKGROUND

Plaintiff Miguel Jackson, an inmate at Georgia Diagnostic and Classification Prison ("GDCP"), filed a pro se civil rights complaint under 42 U.S.C. § 1983 on October 23, 2014. Doc. 1. Plaintiff also filed a "Supplemental Complaint" (Doc. 15) and a motion for leave to file an amended complaint (Doc. 16). This Court granted Plaintiff's Motion to Amend in its initial review pursuant to 28 U.S.C. § 1915A and Fed. R. Civ. 15(a). Doc. 18.

Plaintiff's claims arise out of his solitary confinement in the Special Management Unit ("SMU") at GDCP. He alleged that he was housed in SMU upon his transfer into GDCP on January 4, 2011. According to Plaintiff, he was not provided an initial hearing regarding his placement in SMU or any opportunity to contest such placement.

1

On June 10, 2012, Plaintiff and other inmates went on a hunger strike and filed numerous grievances about being confined in SMU. Plaintiff "led a vigorous campaign exposing and criticizing" prison officials. This issue allegedly attained "nationwide media attention."[1] In September 2012, prison officials created a new SMU standard operating procedure and began to implement it in October 2012. According to Plaintiff, the new SMU procedure actually imposed "more extreme restrictions" on inmates housed in SMU. Such restrictions allegedly included "coercion and a behavior modification program," denial of adequate time outside cell, and restrictions on having visitors and other privileges. Plaintiff also alleged inadequate sanitation and infestation by rodents and insects. According to Plaintiff, he remains in SMU, notwithstanding his completion of the program. At the time the instant action was filed, Plaintiff had been confined in SMU for 1,395 days.

Plaintiff alleged that his due process rights were violated by both his initial confinement in SMU and his continued confinement under the new SMU standard operating procedure. Plaintiff also characterized his continued confinement in SMU as retaliation for the above exercise of his First Amendment rights.

In connection with his SMU confinement, Plaintiff named as Defendants the following GDCP personnel: current Warden Bruce Chatman, former Warden Carl Humphrey, Deputy Warden June Bishop, SMU Superintendent Rodney McCloud, SMU Manager James McMillan, Facilities Operation Director Randy Tillman, and SMU Classification Committee members Rufus Logan, Dwain Williams, and Monique Gholston. Plaintiff also sues Brian Owens, Commissioner of the Georgia Department of Corrections ("GDOC"). The Court allowed

---

[1] See Edward Mitchell, *Prison Hunger Strike Ends as Georgia Denies Abuse Claims*, THE ATLANTA JOURNAL-CONSTITUTION (2012).

Plaintiff's First, Eighth, and Fourteenth Amendment claims to go forward against these Defendants.

Service was ordered to be made on Defendants Chatman, Humphrey, Bishop, McCloud, McMillan, Tillman, Logan, Williams, Gholston, and Owens. On July 2, 2015, all Defendants moved to dismiss Plaintiff's claims because they are time barred and unexhausted. Doc. 28. Discovery was stayed pending the resolution of Defendants' Motion to Dismiss. Doc. 30.

Plaintiff essentially presents two sets of claims in his complaint and amendments: the first set of claims concerns his classification in SMU brought under the First and Fourteenth Amendments; and his second set of claims concern his alleged inhumane conditions of confinement in violation of the Eighth Amendment. Both sets should be dismissed.

## STATUTE OF LIMITATIONS

Plaintiff's claims arising before October 16, 2012, should be dismissed because they are time-barred. In Georgia, the proper limitations period for a Section 1983 claim is the two-year statute for personal injury claims codified at O.C.G. A. § 9–3–33. *Williams v. City of Atlanta*, 794 F.2d 624, 626 (11th Cir. 1986). A statute of limitations begins to run when a cause of action accrues—in other words, when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003) (internal quotation marks and citation omitted).

Because Plaintiff's original complaint is dated October 16, 2014, claims accruing before October 16, 2012, are generally barred by the statute of limitations. In the present case, Plaintiff's First and Fourteenth Amendment claims arise from his placement in the SMU at GDCP in January of 2011. *See* Doc. 1. Therefore, Plaintiff's claims regarding his placement in SMU are barred by the statute of limitations and should be dismissed.

Plaintiff also alleges in his amended complaint that his ongoing detention in SMU after the June 2012 hunger strike was retaliation for exercising rights under the First Amendment and a continuing violation of his rights. However, these claims arise from the same facts that would support a cause of action under Section 1983; specifically that he was placed in SMU. Further, the fact that Plaintiff is still in SMU as a result of those events does not constitute a continuing violation. See *Little v. Markely*, No. 3:15-CV-0067-CAR, 2015 WL 4974150, at *2 (M.D. Ga. Aug. 20, 2015) (citing *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981) ("A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation.")). It thus appears that Plaintiff can prove no set of facts to avoid a statute of limitations bar. This is reason enough to dismiss his claims regarding his classification in SMU. See *Hughes v. Lott*, 350 F.3d 1157, 1163 (11th Cir. 2003) (quoting *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1280 (11th Cir. 2001)).

Further, Plaintiff's claims alleging unsanitary conditions of confinement under the Eighth Amendment, if they concern conditions before October 16, 2012, are similarly time-barred. As discussed below, the evidence presented by Defendants show two grievances were filed by Plaintiff regarding conditions of confinement: Plaintiff's Grievance No. 88965 filed on May 21, 2011, (Doc. 28-4) and Plaintiff's Grievance No. 103459 filed on November 10, 2011. Doc. 28-5. If Plaintiff is now trying to litigate the subjects of those grievances, the complaints are similarly barred by Georgia's Statute of Limitations because they occurred before October 16, 2012, and should be dismissed.

## EXHAUSTION

To the extent that Plaintiff is attempting to litigate conditions that occurred after October 16, 2012, the record reflects that Plaintiff's claims are subject to dismissal because he has failed

4

to exhaust those claims administratively. Congress and the Eleventh Circuit Court of Appeals mandate that this Court must determine whether Plaintiff exhausted his available administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *Bryant v. Rich*, 530 F.3d 1368, 1372–78 (11th Cir. 2008) (noting that exhaustion is "a precondition to an adjudication on the merits"). "To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process." *Id.* (internal quotation marks omitted). This rule applies even where the administrative process is "futile and inadequate." *Alexander v. Hawk*, 159 F.3d 1321, 1325–28 (11th Cir. 1998). That said, administrative remedies must be "available" for the exhaustion requirement to apply. *See, e.g.*, *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322–26 (11th Cir. 2007).

Because exhaustion is "a matter in abatement," it is properly the subject of dismissal. *Bryant*, 530 F.3d at 1374-75. As with other matters in abatement, courts may consider facts outside of the pleadings when determining whether a prisoner properly exhausted his available administrative remedies. *Id.* at 1376. Additionally, courts may resolve factual disputes so long as those disputes do not decide the merits, and so long as the parties have a sufficient opportunity to develop a record. *Id.*

In ruling upon motions to dismiss based upon the affirmative defense of failure to exhaust, courts in this Circuit must follow the two-step process established by *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008). First, courts look to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, the court takes the plaintiff's version of the facts as true. *Turner*, 541 F.3d at 1082. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. If the complaint is not subject to dismissal based on the

5

plaintiff's version of the facts, the court must proceed to the second step, where it makes specific findings of fact in order to resolve the disputed factual issues related to exhaustion. *Id.* At the second step, it is the defendant's burden to prove that the plaintiff failed to exhaust his available administrative remedies. *Id.*

## AVAILABLE ADMINISTRATIVE REMEDIES

Plaintiff alleges general unsanitary conditions in SMU in his initial and supplemental complaint. Doc. 1, p. 13. Plaintiff does not specify a date on which these conditions occurred, however, for the purpose of this recommendation only, Plaintiff's claims are assumed to occur within the statute of limitations and after December 10, 2012, when the Georgia Department of Corrections adopted a new Standard Operating Procedure for filing a grievance. Doc. 28-3, p. 1.

The record reflects that during that period, after December 10, 2012, the Georgia Department of Corrections provided prisoners like Plaintiff with a two-step grievance procedure. Doc. 28-3, pp. 1–15. At step one, a prisoner wishing to file a grievance is required to file no later than ten (10) calendar days from the date he knew or should have known of the facts underlying his grievance. *Id.*, p. 8. The procedure allows the Grievance Coordinator to waive this time limit "for good cause." *Id.* The Warden must respond within forty (40) days. *Id.*, p. 10. If this initial grievance is rejected, the prisoner is required to appeal within seven (7) calendar days. *Id.*, p. 12. If the time allowed for a response expires without a response, the Plaintiff may also file an appeal. *Id.*

Plaintiff also alleges that he was denied his due process rights when he was assigned to Tier III of SMU. The record reflects that during the relevant period, the Georgia Department of Corrections instituted a classification and tier system known as the Special Management Unit. See Doc. 28-8. At issue in the instant case is the highest tier in SMU: Tier III. The purpose of

SMU is to "establish an incentive program based on an increased level of privileges for demonstrated appropriate offender behavior and program compliance. The goal is for an offender to make the appropriate adjustments so that he may be returned to a general population housing assignment." Doc. 28-8, p. 2.

Prisoners like Plaintiff are assigned to Tier III of SMU by the recommendation of the facility's classification committee. Doc. 28-8, p. 6. The recommendation is reviewed by the Warden, who consults with the appropriate Field Operations Manager before making a final recommendation. Doc. 28-8, p. 6. If both the Warden and Field Operations Manager recommend approval of the Tier III program assignment request, the recommendation is then forwarded to Facilities Operations in the central office for final approval. Doc. 28-8, p. 7. Upon final approval, the offender is served with a copy of this action, and the service is documented. Doc. 28-8, p. 7.

The offender may submit written objections to the assignment within fourteen (14) calendar days of receipt of the notice for assignment to Tier III. Doc. 28-8, p. 7. Further, a formal meeting is convened to advise the offender he is being assigned to Tier III. Doc. 28-8, p. 7. A prisoner's status in Tier III is reviewed at least every ninety (90) days. Doc. 28-8, p. 11. Following the review, SMU policy states that prisoners are to be provided with an appeal form and be given the opportunity to formally object to the ninety (90) day review recommendation. Doc. 28-8, p. 12. Decisions of the classification committee regarding housing and/or administrative segregation are always appealable. Doc. 28-6, p. 4.

## ANALYSIS

Applying the *Turner* analysis to the procedures outlined above, Defendants are not entitled to dismissal at step one. Plaintiff asserts, specifically, that he has "undergone and still faces extreme and unusually harsh conditions that [present] an atypical and significant hardship

compared to ordinary prison life" including "inescapable smells of human waste (feces) being stored by inmates," and an "infestation of rodents and insects" which invades his "sleep and food." Doc. 1, pp. 12-13. Plaintiff alleges in his complaint that he filed both formal and informal grievances, which were denied by the Warden and on Appeal. Doc. 1, p. 2. Plaintiff also states in his Supplement to his Complaint that he filed grievances containing the facts of his complaint on September 8, 2014, which was denied by the Warden on October 23, 2014, and denied on appeal on November 18, 2014. Doc. 15, p. 11. Plaintiff also alleges he never received an initial hearing upon his classification to Tier III-SMU. Doc. 1, p. 3.

In analyzing Plaintiff's version of events, his complaint is not entitled to dismissal at *Turner*'s first step. Plaintiff alleges that he filed a grievance, and that he appealed the grievance once it was denied by the Warden. Plaintiff also states that he was not afforded a classification hearing upon Tier III-SMU designation, so was not able to appeal the designation. Therefore, at step one of the *Turner* analysis, Plaintiff's version of the facts, if taken as true, show that Plaintiff exhausted his administrative remedies.

At step two of the *Turner* analysis, the Court must weigh the evidence and make findings of fact. The weight of the evidence presented by Defendants supports a finding that Plaintiff did not fully and properly exhaust his administrative remedies. In addition to their Motion to Dismiss, Defendants present the Affidavit of Darrell Reid, the Chief Counselor at Georgia Diagnostic and Classification Prison (Doc. 28-2); Standard Operating Procedure IIB05-0001, Statewide Grievance Procedure, effective December 10, 2012 (Doc. 28-3); Plaintiff's Grievance No. 88965 filed on May 21, 2011 (Doc. 28-4); Plaintiff's Grievance No. 103459 filed on November 10, 2011; the Affidavit of Rufus Logan, the Unit Manager of the Special Management Unit at Georgia Diagnostic and Classifications Prison and also a member of the Classification

Committee (Doc. 28-6); Standard Operating Procedure IIC02-0004, Classification Committee, effective February 1, 2010 (Doc. 28-7); Standard Operating Procedure IIB09-0004, Special Management Unit – Tier III, effective August 1, 2013; and Plaintiff's Ninety (90) Day SMU Reviews (Doc. 28-9).

Darrell Reid's affidavit asserts that Plaintiff has filed forty-two grievances while incarcerated at GDCP; thirty-three under the former policy and nine under the current policy. Doc. 28-2, p. 8. Plaintiff has only filed two grievances related to conditions of confinement: No. 88965 and No. 103459. Doc. 28-2, p. 8. On May 23, 2011, Plaintiff filed an informal Grievance No. 88965 alleging hazardous conditions in his cell, a plugged drain, which caused him to slip and fall while he was showering due to a backup of soapy water. Doc. 28-2, p. 8. The grievance was denied by the warden following an investigation showing the drain was operating properly. Doc. 28-2, p. 8. Plaintiff did not appeal this grievance. Doc. 28-2, p. 8.

Plaintiff also filed an informal grievance on November 10, 2011, alleging that the light fixture in his cell was hanging "dangerously." Doc. 28-2, p. 8. The grievance was not converted to a formal grievance and no further action was taken by any party. Doc. 28-2, p. 8. Plaintiff did not file any other grievances concerning conditions of confinement. Doc. 28-2, p. 9.

Plaintiff also did not file any classification committee appeals relating to his housing assignment or his confinement to the SMU during the two years prior to filing this lawsuit. Doc. 28-6, p. 4. The record reflects that Plaintiff received a ninety-day SMU review at least once every ninety days, and that an appeal form was issued to Plaintiff at every review. Doc. 28-9.

The evidence presented by Defendants shows that at step two Plaintiff's complaint must be dismissed for failure to exhaust administrative remedies as: (1) he did not file a grievance regarding his conditions of confinement within ten days from date he knew or should have

known of the facts underlying his grievance; and (2) he did not appeal his classification in Tier III of the Special Management Unit.

Because the PLRA requires "proper exhaustion" *Woodford v. Ngo*, 548 U.S. 81, 90, 93–97 (2006), and because the Defendants have met the burden of demonstrating that Plaintiff did properly exhaust his administrative remedies, it is recommended that Plaintiff's complaint be dismissed.

## CONCLUSION

Because Plaintiff failed to exhaust his available administrative remedies, it is **RECOMMENDED** that the Defendant's Motion be **GRANTED**, and that Plaintiff's Complaint be **DISMISSED**. Pursuant to 28 U.S.C. 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 20th day of October, 2015.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge